REQUESTED BY: Senator Jerome Warner Nebraska State Legislature 1116 State Capitol Lincoln, Nebraska 68509
Dear Senator Warner:
This letter is in response to your earlier correspondence in which you requested our opinion as to certain matters involving LB 805. Specifically, you asked whether the committee amendments to LB 805, which provide for an advisory role by the Nebraska Power Review Board in the event of any disagreement among parties to an agreement formulated under LB 805, render either the state or federal antitrust exemption provided for in the bill ineffective or invalid. Our conclusions are set forth below.
LB 805 basically allows various suppliers of electric power and energy, including public power districts, individual municipalities, cooperatives and others, to enter into written agreements among themselves which prohibit, limit or set conditions upon the rights of the parties to the agreement to sell power and energy at wholesale to other entities or which require parties to the agreement to purchase power and energy from other entities. Section 1 of LB 805 specifically provides that it is the public policy of this state to provide its citizens with adequate electric service at as low an overall cost as possible, and that in furtherance of such policy, it is necessary to avoid and eliminate conflict and competition among suppliers of electric power and energy and to avoid duplication of facilities and resources which result from such conflict and competition. Section 3 of LB 805 provides that before any such agreement among entities providing power or energy shall become effective, it shall be submitted to and approved by the Nebraska Power Review Board. In connection with such approval, the Power Review Board shall determine whether the agreement in question is in furtherance of the public policy of this state as set forth in Section 1 of the bill. The Power Review Board may also make such investigation as it determines necessary, give notice to parties affected by the agreement in question, and hold a hearing if it determines one to be desirable. Section 5 of LB 805 provides that parties entering into agreements as authorized by the bill shall receive a full exemption and immunity from state and federal antitrust laws.
Section 4 of LB 805, as it was originally introduced, provides that in the event of a disagreement among the parties to an agreement authorized by the bill, a party to the agreement may file a written complaint with the Nebraska Power Review Board requesting that board to hear the complaint and issue an order for settlement of the disagreement. Section 4 of LB 805 also originally required the Power Review Board to hear the complaint and issue an order for disposition of the dispute. The committee amendments to Section 4 of LB 805 continue to allow the Nebraska Power Review Board to hold a hearing concerning any matter in disagreement among the parties to a power and energy agreement. However, under the committee amendments, the recommendations of the Nebraska Power Review Board for ultimate disposition of the matter in disagreement are advisory only. The question considered in this opinion is whether this change in the role of the Power Review Board in regard to disagreements involving parties to an energy agreement makes the antitrust exemption contained in LB 805 ineffective or invalid.
Our state antitrust laws are primarily contained in the provisions of the Junkin Act, Neb.Rev.Stat. § 59-801 etseq. (Reissue 1978) and the Nebraska Consumer Protection Act, Neb.Rev.Stat. § 59-1601 et seq. (Reissue 1978). Since these various state antitrust provisions are statutory creations of the Legislature, we would assume that the Legislature can act to exempt certain transactions from coverage by the statutes. Indeed the Nebraska Consumer Protection Act already contains a specific statutory exemption for certain types of transactions. See, Neb.Rev.Stat. § 59-1617 (Reissue 1978). Accordingly, it would seem to us that the exemption provisions contained in LB 805 would provide an exemption from the state antitrust laws regardless of the power or authority given to the Nebraska Power Review Board. Immunity from the federal antitrust laws, however, requires further analysis.
The type of agreement envisioned by LB 805 would appear most likely to contravene the provisions of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq. Among other things, the Sherman Act prohibits contracts or conspiracies in restraint of trade, and monopolies or attempts to monopolize trade or commerce. There is some federal case law which indicates that a state may not give immunity to those who violate the terms of the Sherman Act by simply authorizing them to violate it or by declaring that their action is lawful.Schwegmann Brothers v. Calvert Distillers Corporation,341 U.S. 384 (1951); California Liquor Dealers v. Midcal Aluminum,445 U.S. 97 (1980). However, there is a series of cases beginning with Parker v. Brown, 317 U.S. 341
(1943), which establishes the so-called `state action immunity' in those instances where a certain activity is compelled by the direction of the state acting as a sovereign. The most recent case in this series of opinions which has application to the present question is California LiquorDealers v. Midcal Aluminum, supra. In that case, the United States Supreme Court considered the legality of a wholesale wine pricing system which allowed wine producers in California to set wholesale prices of wine for separate regions within the state. The privately set prices were enforced by the California Department of Alcoholic Beverage Control. In Midcal, the Supreme Court indicated that there were two requirements for antitrust immunity under theParker doctrine. First of all the challenged restraint must be `one clearly articulated and affirmatively expressed as state policy.' Id. at 105. Second, the restraint must be `actively supervised' by the state itself. Id. at 105. In Midcal, the wholesale pricing system was held to be illegal because the State of California did not actively involve itself in supervision of the pricing decisions.
It appears to us that LB 805 with the committee amendments included meets the test for state action immunity as set forth in the Midcal case. Section 1 of LB 805 clearly sets forth an affirmative state policy to replace competition among suppliers of electric power and energy with some form of agreed allocation of territories and customers. This section would satisfy the first part of the Midcal
test. Section 3 of LB 805 provides that no agreement among suppliers of electric power and energy shall become effective until that agreement is submitted to and approved by the Nebraska Power Review Board. That section further requires that the Nebraska Power Review Board shall determine whether the agreement in question is in furtherance of the public policy set forth in Section 1 of the bill. These provisions would appear to satisfy the second part of theMidcal test which requires that the policy to replace competition be actively supervised by the state. With these provisions intact, the committee amendments which make the role of the Power Review Board advisory only in connection with disagreements under energy and power agreements would appear to have little bearing on the question of antitrust immunity. Consequently, it is our view that the committee amendments to LB 805 will not render ineffective or invalid either the state or the federal antitrust exemption provided for in that bill.
Sincerely yours,
PAUL L. DOUGLAS Attorney General
Dale A. Comer Assistant Attorney General